577 So.2d 1306 (1991)
Edwin GOENE, Petitioner,
v.
STATE of Florida, Respondent.
No. 75218.
Supreme Court of Florida.
March 21, 1991.
Rehearing Denied May 8, 1991.
Richard L. Jorandby, Public Defender and Tanja Ostapoff, Asst. Public Defender, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and James J. Carney, Asst. Atty. Gen., West Palm Beach, for respondent.
PER CURIAM.
We have for review Goene v. State, 552 So.2d 337, 338 (Fla. 4th DCA 1989), in which the district court certified the following question as one of great public importance:
Are the holdings in Senior v. State, 502 So.2d 1360 (Fla. 5th DCA), rev. denied, 511 So.2d 299 (Fla. 1987); Katz v. State, 335 So.2d 608 (Fla. 2d DCA 1976); and Doe v. State, 492 So.2d 842 (Fla. 1st DCA 1986), valid, in light of the enactment of the sentencing guidelines, for the reason that a complete and accurate prior criminal record of a defendant is essential to a proper computation of a sentence under said guidelines?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
We rephrase the question in light of the facts of this case as follows:
May a trial court resentence to a greater term a defendant who, because he affirmatively misrepresented his identity, was originally sentenced pursuant to an inaccurate scoresheet?
For the reasons expressed in this opinion, we answer the question as rephrased in the affirmative and approve the decision below.
Edwin Goene was adjudicated guilty on March 9, 1988, of armed robbery, false imprisonment, and carrying a concealed *1307 weapon. Although Goene asked to be immediately sentenced, the state requested a presentence investigation to confirm that Goene had no prior criminal convictions. At the sentencing hearing on April 5, 1988, the presentence investigation failed to uncover any record of an Edwin Goene in Prattville, Alabama, and the state produced no records to confirm or dispute Goene's identity. The judge asked Goene what his real name was, and Goene responded, "That's my real name, your honor." Despite the lack of records to confirm Goene's identity or establish prior crimes, the state did not move for a continuance or object to the sentencing, and the trial judge sentenced Goene under the guideline to four and one-half years' imprisonment.
Subsequently, the state received an analysis of Goene's fingerprints from the FBI revealing that Goene's real name was Russell Dean Gorham and that he had an extensive criminal history. Had that history been scored, the guideline sentence range would have been twelve to seventeen years. On May 24, 1988, the state filed a motion in the trial court to vacate the sentence, arguing that Goene's misrepresentations had produced an inaccurate scoresheet. By this time, Goene had already commenced serving his sentence. On June 1, 1988, the motion was granted, and the judge resentenced Goene to seventeen years.[1] The Fourth District Court of Appeal affirmed the conviction and resentence.
Goene argues that resentencing him to a greater term after he had begun serving the original sentence violates the prohibition against double jeopardy under the Florida and federal constitutions. The United States Supreme Court has established that the
guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.
North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). The underlying purpose of the double jeopardy clause is to avoid subjecting the defendant to repeated embarrassment, expense, anxiety, and insecurity. Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957). In short, the defendant at some point must be entitled to rely on the finality of the court's action.
The state argues that the resentencing here is permitted under the Supreme Court's decision in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). The issue presented in DiFrancesco was whether a federal statute authorizing the state to appeal a sentence violated the double jeopardy clause. In reaching its conclusion that double jeopardy principles were not violated, the United States Supreme Court stated:
[O]ur task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rulings of this Court, nor even considerations of double jeopardy policy support such an equation.
... .
This Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal.
DiFrancesco, 449 U.S. at 132, 134, 101 S.Ct. at 434, 436. The Court concluded *1308 that because the defendant was aware that a dangerous-special-offender sentence was subject to being increased on appeal, the defendant's "legitimate expectations" of finality were not defeated by an increased sentence on appeal "any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." Id. at 137, 101 S.Ct. at 437 (emphasis added).
We find that the analysis set forth in United States v. Jones, 722 F.2d 632 (11th Cir.1983), is the correct interpretation of DiFrancesco and the appropriate application of double jeopardy principles to the situation at bar.
We are able to draw two lessons from that opinion [DiFrancesco]. First, the Double Jeopardy Clause bars multiple punishment, i.e., punishment in excess of that permitted by law. Id. [101 S.Ct.] at 438. Second, the Double Jeopardy Clause respects the defendant's "legitimate expectations" as to the length of his sentence. Id. at 437.
... .
For the purpose of determining the legitimacy of a defendant's expectations, we draw a distinction between one who intentionally deceives the sentencing authority or thwarts the sentencing process and one who is forthright in every respect. Whereas the former will have purposely created any error on the sentencer's part and thus can have no legitimate expectation regarding the sentence thereby procured, the latter, being blameless, may legitimately expect that the sentence, once imposed and commenced, will not later be enhanced.
Jones, 722 F.2d at 637-38 (emphasis in original). See also United States v. Bishop, 774 F.2d 771, 775 (7th Cir.1985) ("A court must be able to sentence a defendant upon accurate information and when the sentence imposed is based upon fraudulent information provided by the defendant, the court has the inherent power to correct that sentence.")
Goene argues that Florida courts have long followed the rule that once a defendant has begun to serve his sentence, the judge may not recall that defendant and resentence him to an increased term. While this may be the general rule in Florida, it is clear that there are exceptions to the rule. In Smith v. Brown, 135 Fla. 830, 185 So. 732 (1938), for example, the defendant was adjudged guilty of the larceny of an automobile and sentenced to serve six months in county jail. During the same term of the court, the sentence was revoked and annulled and the defendant was temporarily discharged. Approximately one year later, the defendant was again brought before the court and sentenced to serve a period of two years in the state prison under the conviction above referred to. The defendant argued on appeal that because he had begun to serve the sentence first imposed upon him, the court was without authority or power to vacate and revoke the sentence and the later-imposed sentence was therefore without force and effect. The Court noted the existence of cited authorities which concluded that a court had no authority to modify a sentence after the defendant had begun serving the sentence. The Court then stated:
The weight of authority appears to support these enunciations but in none of these cases does it appear that the action of the trial court in attempting to set aside and revoke the sentence at the same term of the court was taken on the application of the defendant. The record in the instant case shows that immediately after the defendant was sentenced he developed pneumonia and that his physician represented to the trial court that the defendant "is suffering from pneumonia and that his removal from said county jail is necessary in order to save the defendant's life," and upon this representation the trial court acted.
135 Fla. at 833, 185 So. at 733. The Court concluded that the conditions at bar resulted in the case being controlled by an exception to the general rule:
"But where, at the request of a convicted defendant, or at his instance or *1309 approval given during the same term at which a criminal sentence is imposed, the court has vacated or annulled its presently imposed sentence, and deferred the proposition of imposing a new sentence to a subsequent term of court, to which the case is continued ..., the court may, at such subsequent term, impose a new sentence upon the original judgment of conviction, even though such new sentence is greater, or materially different in effect from that first imposed and thereafter vacated."
Id. at 834, 185 So. at 733 (quoting State ex rel. Rhoden v. Chapman, 127 Fla. 9, 172 So. 56 (1937)). The case at bar is analogous in that the original sentence was affected by some affirmative act on the part of the defendant. The facts at issue warrant a conclusion that this case is also not controlled by the general rule that once a defendant has begun to serve his sentence, the judge may not recall that defendant and resentence him to an increased term.
As this Court has previously recognized, orders, judgments or decrees which are the product of fraud, deceit, or collusion "may be vacated, modified, opened or otherwise acted upon at any time. This is an inherent power of courts of record, and one essential to insure the true administration of justice and the orderly function of the judicial process." State v. Burton, 314 So.2d 136, 138 (Fla. 1975). As the state correctly points out, to hold otherwise in circumstances such as the one now before this Court would encourage and reward a defendant's use of aliases; the more aliases used, the less likely a defendant would be to receive a correct guideline sentence.
In the present case, Goene intentionally committed fraud upon by the court by falsely stating his identity. Knowing that the sentence originally imposed was lower than a sentence which would have been imposed had his true identity been revealed, because of the absence of his prior criminal history, Goene should have realized that if the falsity of his statements was revealed, his freedom would be affected by reimposition of a correct sentence. Goene therefore had no legitimate expectation of finality in the sentence originally imposed and there is no double jeopardy prohibition against reimposition of a correct sentence.[2]
Accordingly, the decision below is approved. The certified question, as rephrased, is answered in the affirmative.
It is so ordered.
*1310 SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
I agree with the majority that the rule in Florida is that once a defendant has begun to serve his sentence, double jeopardy principles preclude resentencing the defendant to an increased term.[3] I do not concur with the exception the majority creates in this case because such an exception undermines the very purpose of the double jeopardy clause.
The majority concedes that "[t]he underlying purpose of the double jeopardy clause is to avoid subjecting the defendant to repeated embarrassment, expense, anxiety, and insecurity. Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957). In short, the defendant at some point must be entitled to rely on the finality of the court's action." At 1307-1308. Under the double jeopardy clause, the state is required to marshal all the evidence and present it at one time, not in a piecemeal fashion. Such finality has been deemed to be paramount in double jeopardy analysis. It applies to prevent retrial when the state acquires new evidence after an acquittal. It applies even if an acquittal is obtained by the defendant's own perjured or "fraudulent" testimony. In this context, I believe double jeopardy finality concerns apply equally to resentencing.
The majority suggests that the defendant's actions vitiate his expectation of finality, analogizing to United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). I do not find DiFrancesco applicable. The issue presented in DiFrancesco was whether a federal statute authorizing the state to appeal a sentence violated the double jeopardy clause. After considering the history of sentencing practices, prior Court decisions, and double jeopardy policy, the Court held that double jeopardy principles were not violated because the statutory right to appeal gave the defendant no expectation of finality in his sentence. In short, the "case" had not yet been completed:
Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.
The guarantee against multiple punishment that has evolved in the holdings of this Court plainly is not involved in this case.
DiFrancesco, 449 U.S. at 139, 101 S.Ct. at 438 (citations omitted) (emphasis added). By its express language, the Court's holding is clearly limited to statutes authorizing the government to appeal a sentence. In the case before us, however, under state law Goene's facially valid guidelines sentence could not be appealed by the state. In DiFrancesco, the case was not over; in this case it was. Thus, Goene was entitled to rely on the finality of the original sentence.
While I do not condone lying to the court, I am compelled to emphasize that the defendant does not have any obligation to *1311 produce any evidence against himself and that the state has the burden of timely developing its case against the defendant, including the preparation of the sentencing scoresheet or any other pertinent sentencing information. It is clear from the record that the state was suspicious of Goene's apparent lack of criminal history. The state requested and was granted an order requiring a presentence investigation report to determine whether Goene did in fact have a criminal history. Yet when the presentence investigation report failed to reveal any records from Goene's past, the state neither objected to the sentencing nor requested a continuance to further investigate Goene's background. It is especially noteworthy that the state proceeded with sentencing knowing that the FBI had not yet sent the state its analysis of Goene's fingerprints.
Just as "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding," Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978), so do the principles of double jeopardy forbid resentencing where the state has failed to supply evidence that it could have had available at the original sentencing. Here the state knew it did not have a fingerprint identification yet it failed to ask for a continuance until Goene's identity could be confirmed. Under these facts, Goene was justified in relying on the finality of the sentencing order, and his double jeopardy rights were violated when the judge resentenced him to an increased term.
This result is consistent with the United States Supreme Court's recent double jeopardy analysis in Grady v. Corbin, ___ U.S. ___, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which focused largely on the state's failure to act appropriately with information about the defendant that it had available. In Grady, Corbin caused an automobile accident in which one person died and another was seriously injured. Corbin received traffic citations for driving while intoxicated and failing to keep right of the median. When Corbin pled guilty to the traffic offenses, he was not asked nor did he volunteer whether others had been injured in the accident. No one from the district attorney's office was present during the plea hearing, despite the fact that an assistant district attorney had been present at the accident scene and the state was conducting an investigation.
Several weeks later at sentencing for the traffic offenses, an assistant district attorney present recommended a "minimum sentence," never having learned of the fatality and being unable to locate the case file. Despite her apparent ignorance of the case, "she did not seek an adjournment so that she could ascertain the facts necessary to make an informed sentencing recommendation." Id. 110 S.Ct. at 2089. Two months later, the state brought additional charges against Corbin for criminally negligent homicide and third-degree reckless assault. The Supreme Court held that double jeopardy barred the subsequent prosecution. Id. at 2087. The Court reasoned in part that since the state had the resources and ability to bring all the charges in one proceeding, the defendant should not be subjected to consecutive prosecutions:
Prosecutors' offices are often overworked and may not always have the time to monitor seemingly minor cases as they wind through the judicial system. But these facts cannot excuse the need for scrupulous adherence to our constitutional principles. With adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question.
Id. at 2095 (citation omitted).
In the present case, just as in Grady, the state had available the resources and ability to "ascertain the facts necessary to make an informed sentencing recommendation." Id. at 2089. If the state had any *1312 doubts about Goene's identity, it should have asked for a postponement until it got Goene's identity confirmed. Had the state followed through on its obligations, a resentencing never would have been necessary.
I do not suggest that Goene's lying to the court should go unpunished. Just as the state may charge an acquitted defendant who lied on the witness stand with perjury or contempt of court, see, e.g., United States v. Williams, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951), so may the state pursue these same remedies against Goene. See Doe v. State, 492 So.2d 842 (Fla. 1st DCA 1986); Katz v. State, 335 So.2d 608 (Fla. 2d DCA 1976).
For the reasons expressed above, I would quash the decision of the district court.
KOGAN, J., concurs.
NOTES
[1] The trial judge specifically couched his ruling in the alternative, stating three different bases for his decision to resentence Goene: (1) The court has inherent power to modify a fraudulently procured court order; (2) Florida Rule of Criminal Procedure 3.800(a) grants the court the power to correct an illegal sentence; and (3) Florida Rule of Criminal Procedure 3.800(b) grants the court the power to modify any sentence within 60 days.
[2] Our conclusion requires disapproving the district court's decision in Katz v. State, 335 So.2d 608 (Fla. 2d DCA 1976). In Katz, the district court concluded that the "U.S. Supreme Court has held resentencing on the same charge to be a violation of the double jeopardy clause of the U.S. Constitution," citing Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), and this Court's quotation of Benz in Troupe v. Rowe, 283 So.2d 857 (Fla. 1973). Id. at 608. We note, however, that the district court's decision in Katz was issued prior to the decision of the United States Supreme Court in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In DiFrancesco, the Supreme Court stated:

The real and only issue in Benz however, was whether the trial judge had the power to reduce a defendant's sentence after service had begun. The Court held that the trial court had such power. It went on to say gratuitously, however, and with quotations from a textbook and from Ex parte Lange, that the trial court may not increase a sentence, even though the increase is effectuated during the same court session, if the defendant has begun service of his sentence. But the dictum's source, Ex parte Lange, states no such principle. In Lange the trial court erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one or the other of these two punishments. Lange had paid the fine and served five days in prison. The trial court then resentenced him to a year's imprisonment. The fine having been paid and the defendant having suffered one of the alternative punishments, "the power of the court to punish further was gone." The Court also observed that to impose a year's imprisonment (the maximum) after five days had been served was to punish twice for the same offense. The holding in Lange, and thus the dictum in Benz are not susceptible of general application. We confine the dictum in Benz to Lange's specific context.
449 U.S. at 138-39, 101 S.Ct. at 438-39 (emphasis in original; citations omitted). The Court continued by noting that "[a]lthough it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it," the argument has no force where there was no expectation of finality in the original sentence because Congress had specifically provided that the sentence was subject to appeal. Id. at 139, 101 S.Ct. at 438. The same result is warranted where, as in the present case, the original sentence is the result of an affirmative fraudulent representation to the court by the defendant.
The decisions in Senior v. State, 502 So.2d 1360 (Fla. 5th DCA), review denied, 511 So.2d 299 (Fla. 1987), and Doe v. State, 492 So.2d 842 (Fla. 1st DCA 1986), are also disapproved to the extent they conflict with the present decision.
[3] See, e.g., Smith v. Brown, 135 Fla. 830, 185 So. 732 (1938); Katz v. State, 335 So.2d 608 (Fla. 2d DCA 1976).