704 So.2d 723 (1998)
James STOMBAUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 97-921.
District Court of Appeal of Florida, Fifth District.
January 9, 1998.
*724 James B. Gibson, Public Defender, and Andrea J. Surette, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David H. Foxman, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Stombaugh appeals from his convictions for three counts of burglary of a dwelling and one count of burglary of a structure, and the sentence he ultimately received of 36 months in the Department of Corrections, followed by five years probation to include sexual offender counseling, and an order of restitution in the amount of $4,247.31. We affirm in part; reverse in part; and remand for further proceedings.
Stombaugh first argues that he had already begun serving his sentence (a fortyfive month suspended sentence, followed by two years on community control, followed by two years on probation) before the trial judge changed and increased it, and in so doing, violated his double jeopardy rights.[1] However, the history of Stombaugh's encounters with the judicial system makes those authorities inapplicable.
In August of 1994, Stombaugh entered a nolo contendere plea to three counts of burglary of a dwelling and one count of burglary of a structure. He also admitted to violating his probation in a 1993 case. As part of the plea bargain, the state agreed to a maximum total sentence of three years in the Department of Corrections to be followed by five years probation. The trial judge ordered a PDR and since it was delayed, he released Stombaugh on his own recognizance on November 22, 1994.
No sentencing was had on these cases at that time. The reasons for that were not clear. Stombaugh went to New York where he lived and worked for two years. He kept in contact with his family and lawyer. Florida apparently issued a warrant for failure to appear. When he was arrested in New York for a misdemeanor, Stombaugh testified he first learned of the warrant and he returned to this state.
On January 15, 1997, the state charged him with uttering a forgery and cashing a check with intent to defraud. He pled guilty to the first count, and the state agreed to nol pros the failure to appear in the 1994 cases, as well as the second count in the 1997 case. The state agreed to a maximum sentence of 27.3 months, followed by three years probation, for all of the criminal charges.
The trial judge took notice of the fact that the defendant was only twenty years old, and had committed the prior offenses when he was seventeen, and that he had served some ten months in jail. He had a fianc' who was pregnant with twins, and he indicated he desired to work to support them. He urged the court to be lenient, saying he had not been in trouble for two years. In response to a direct question by the judge, he denied he had been arrested in New York for any *725 kind of serious criminal offenseonly a misdemeanor which had led to his returning to Florida.
The judge said if he knew more about the defendant and was convinced he had changed and would not get into any more trouble, he might consider something "less." He sentenced him in court to 27.3 months as a youthful offender to be followed by three years supervision, restitution in excess of $4,000.00, and "sex offender counseling." At the hearing, Stombaugh disputed the amount of restitution and the court said it would set a restitution hearing.
The court heard testimony from Stombaugh's mother and his fiance. They explained they had repeatedly asked the public defender about a sentencing date and were always told that none had been set. His mother testified that although a hearing date was set, no notice was sent to her son. The court said it felt the judicial system was at least partially to blame for Stombaugh's failure to appear for sentencing. The judge decided to change the sentence to three years community control, followed by two years probation with a forty-five-month suspended sentence. It repeated the necessity for restitution and sex offender counseling.
The following day the court confronted Stombaugh with the fact that he had been indicted in New York for sexual battery. He reminded Stombaugh that the prior day under oath he had told the court he had not been in any trouble in New York. The prosecutor reported that Stombaugh had been indicted in New York for two D class felonies (punishable by twenty-five years in prison, and ten D class felonies punishable by seven years in prison). Stombaugh denied any knowledge about the out-of-state indictments. Convinced that Stombaugh had lied to him the prior day, the court vacated the reduced sentence.
On March 13, the court held another hearing. By that time it had received copies of the out-of-state indictments. It imposed a thirty-six month sentence, followed by five years on probation; it ordered sex offender counseling; and it imposed two restitution orders totaling $2,723.31. Stombaugh denied any knowledge of the indictments, but that did not excuse the fact that he had denied engaging in any criminal activity during the past two years whether it was prosecuted or not. The trial court ruled that he had lied to the court. It imposed a sentence consistent with the original plea bargain.
With regard to the double jeopardy issue, we think this case is analogous to Goene v. State, 577 So.2d 1306 (Fla.1991). In that case, the defendant gave an incorrect name at the sentencing hearing to avoid being assessed with points on his scoresheet for prior criminal convictions. He was sentenced under the guidelines to four and one-half years in prison. Later the state discovered the defendant's real identity from his fingerprints, and learned he had an extensive criminal history. Had it been scored properly, Goene would have been sentenced under the guidelines to twelve to seventeen years. The court ruled that the double jeopardy clause did not prevent resentencing because the defendant had intentionally deceived the sentencing authority and thwarted the sentencing process.
As part of Stombaugh's plea agreement, he agreed to participate in sex offender evaluation. Although the written probation order places him on "sex offender evaluation," he argues this constitutes sexual offender probation, with its concomitant conditions. He did not agree to any of those conditions as conditions of his probation and, in fact, none of the crimes for which he received probation are sex crimes. Since it is unclear what the trial court or the defendant intended in this regard, we remand this cause for the purpose of allowing the court to address and clarify the discrepancies in the oral sentencing transcript, written sentence and the order of probation. See Driver v. State, 695 So.2d 1318 (Fla. 2d DCA 1997); Green v. State, 615 So.2d 823 (Fla. 4th DCA 1993); Santamaria v. State, 528 So.2d 941, 942 (Fla. 3d DCA 1988).
Further, in case number 97-29, the written probation order erroneously states that Stombaugh pled nolo contendere to count II, and indicates he was sentenced to five years probation concurrent with count I. However, the state nol prosed count II as *726 part of the plea bargain. Thus we remand to correct the scrivener's error. Mosco v. State, 640 So.2d 1219 (Fla. 5th DCA 1994). Another scrivener-type error which must be corrected is the failure of the trial court to enter a written sentence in case number 93-3062, after orally pronouncing a sentence of time served. The court should also enter a written revocation of probation in case number 93-3062 specifying the conditions of probation which the defendant violated, although that is a moot point.
Finally, Stombaugh argues that the restitution amount should be stricken and the matter reset for hearing. As part of the plea bargain, Stombaugh agreed to pay restitution but at the sentencing hearing, he objected to the amount. The court stated it would hold a hearing at a later time on that issue, but apparently failed to do so. On remand, the amount should be determined after notice and hearing to set the amount. Trice v. State, 655 So.2d 1270 (Fla. 2d DCA 1995). The state must prove the actual amount of the loss. Hamrick v. State, 648 So.2d 274 (Fla. 4th DCA 1995); § 775.089(7), Fla. Stat. (1996).
AFFIRMED, in part; REVERSED in part; and REMANDED for further proceedings.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] Fifth Amend., U.S. Const; Art. 1, § 9, Fla. Const.; North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Troupe v. Rowe, 283 So.2d 857 (Fla.1973); Ruffin v. State, 589 So.2d 403 (Fla. 5th DCA 1991).