# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-2038
1D16-2039
1D16-2040
1D16-2041
1D16-2042
(Consolidated for disposition)

_____

JAMES WILLIAM MOCK, III,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Angela Cox, Judge.

June 8, 2018

ROBERTS, J.

The appellant, James William Mock, III, argues that the trial court violated the principles of double jeopardy when it resentenced him on three counts to fifteen years in prison when it previously sentenced him to ten years in prison on those counts. Based on the written terms of the plea agreement, the representations made by the State and defense during the presentation of the plea agreement, and evidence that the trial court had the plea agreement before it prior to accepting the plea,

we find that the appellant had an expectation in the finality of his sentences.

When the appellant's case came before the trial court, defense counsel told the trial court that the parties had entered into a plea agreement to resolve all of the appellant's pending cases. Defense counsel stated that the State agreed to drop some of the charges in four of the appellant's six cases and to run his sentences concurrently. Upon the State announcing that it had agreed to run the three minimum mandatory sentences concurrently rather than consecutively, the trial court asked for the cases numbers for those minimum mandatory sentences.  After the State provided the case numbers, the State said "[a]nd all sentences for all cases will be run concurrent as well." Defense counsel then explained the terms of the plea agreement, which included a reiteration that all of the appellant's remaining eight counts would run concurrently, with the sentences being up to the trial court.

During the plea colloquy, the trial court went over the minimum and maximum sentences the appellant could receive for each felony degree.  The appellant acknowledged that he understood each of the sentencing ranges. The trial court then stated that the State agreed to run the minimum mandatory sentences concurrently even though they were supposed to run consecutively and the minimum sentence he could receive was ten years in prison and the maximum sentence was life imprisonment. The appellant acknowledged that he understood. Later in the plea colloquy, the trial court acknowledged that it had plea agreement before it when it asked the appellant if he had thoroughly reviewed the terms of it. The written plea agreement stated that the State agreed that all of the sentences would run concurrently. The trial court ultimately accepted the appellant's plea and postponed sentencing.

In the interim, the appellant hired private counsel and filed a motion to withdraw his plea stating that his prior counsel had coerced him into accepting the plea and that he did not have sufficient time to fully evaluate his decision. Weeks later, he filed a notice withdrawing his motion to withdraw his plea. When the case came back before the trial court, the trial court conducted another colloquy with the appellant to ensure that he understood

2

the terms of his prior plea deal and that he would be bound by those terms. In that colloquy, the trial court stated that the appellant was leaving sentencing up to the trial court and his mandatory minimum sentences would still run concurrently. The appellant stated that he understood the terms and still wanted to withdraw his motion to withdraw his plea.

When the parties reconvened months later for sentencing, the appellant was still represented by private counsel and there was a different prosecutor assigned to the appellant's case. The trial court ordered one of the appellant's sentences, from a case not before this Court on appeal, to run consecutively to his other sentences. Neither the State nor the defense brought it to the trial court's attention that the consecutive sentence violated the plea agreement.

The consecutive sentences prompted the appellant to file a motion to correct sentencing error pursuant the Florida Rules of Criminal Procedure 3.800. At the resentencing hearing, the trial court stated that it remembered the plea agreement being represented as an agreement to run only the minimum mandatory sentences concurrently, but the trial court noted that the written plea agreement did not limit the concurrent sentences. The defense argued that the plea form was a contract, and the appellant was entitled to have all his sentences run concurrently. The State argued that the trial court's interpretation of the parties' agreement was supported by the "spirit of the agreement" and the plea colloquy. The State further argued that the original prosecutor also confirmed that this was the understanding of the parties. The trial court stated that it always intended to sentence the appellant to fifteen years in prison and increased the sentences at issue by five years.

The legality of a sentence is a question of law and as such is reviewed de novo. *Washington v. State*, 199 So. 3d 1110, 1111 (Fla. 1st DCA 2016). Courts perform a de novo review to determine if a double jeopardy violation has occurred. *Graham v. State*, 170 So. 3d 141, 142 (Fla. 1st DCA 2015).

> As [one's right to be free from double jeopardy] relates to barring multiple punishments for the same offense in the

noncapital sentencing context, the application of the double jeopardy clause turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence. In other words, the later imposition of more onerous terms violates the double jeopardy clause only when it disrupts the defendant's legitimate expectations of finality.

*Dunbar v. State*, 89 So. 3d 901, 904-05 (Fla. 2012) (internal citations omitted) (internal quotations omitted).

In this case, the State argues that such circumstances exist. The State argues that the appellant waived his right to double jeopardy or had no expectation of finality in his sentences. Finding no waiver, we turn to whether the appellant had an expectation of finality. The only argument advanced by the State that the appellant did not have an expectation in the finality of his sentences is predicated on the appellant's affirmative misrepresentation of facts to the trial court. The State argues that the appellant knew the trial court was making an error and failed to correct the trial court's error concerning the terms of his plea agreement. The Florida Supreme Court has stated that a defendant who actively misrepresents facts to the trial court does not have an expectation in the finality of his sentences. *Goene v. State*, 577 So. 2d 1306, 1309 (Fla. 1991). To support its position that the appellant did not have an expectation in the finality of his sentences based on a misrepresentation, the State cited to two cases.

The first case is *Unger v. State*, 492 So. 2d 1168 (Fla. 4th DCA 1986). In *Unger*, the Fourth District Court of Appeal reviewed the original plea colloquy and found that the defendant did not deceive the trial court about her previous criminal history as alleged by the State, but merely answered her counsel's questions about the restitution in her previous case. The Fourth District Court held that the defendant did not waive her double jeopardy rights because the record was far from clear that the defendant either

4

intended to misrepresent her criminal record or understood that her failure to furnish more information about her criminal record could result in a harsher sentence.

The State also cited to *United States v. Jones*, 722 F.2d 632 (11th Cir 1983). In *Jones*, the trial court structured the defendant's sentence in a way that allowed him to assist in the harvesting of his crops, so that the crops could be sold to help pay back the federal government the money the defendant owed it. Later that same week, the trial court realized that it had erroneously concluded that the yield from the crops could be used to pay back the government and increased the defendant's sentence. On appeal, the Eleventh Circuit said that one could argue that the defendant knew or should have known that the trial court misunderstood the situation, but it declined to create a process to explore a defendant's understanding of the process. The Eleventh Circuit reasoned that even though the defendant might have been aware that the government would have difficulties in obtaining any portion of the crop yields, it could not assume that the defendant knew that the trial court had not taken all the available information into account and would have sentenced him more harshly if it had. The Eleventh Circuit held that the defendant had an expectation in his initial sentence.

Based on *Unger* and *Jones*, there should be evidence contained in the record that the appellant withheld information from the trial court. The only possible information the appellant could have withheld from the trial court was his knowledge of the trial court's misunderstanding about the plea agreement. In order for this Court to find that the appellant withheld this knowledge, this Court has to know that the appellant possessed this knowledge. There are multiple instances in which the trial court stated that the State had agreed to run the minimum mandatory sentences concurrently. Those statements can be interpreted as containing the entirety of the trial court's understanding of the plea, or as the trial court emphasizing that specific portion of the plea agreement because that portion required the trial court to sentence the appellant to at least ten years in prison. Because the trial court's statements can be interpreted differently, this Court cannot assume that the appellant possessed the knowledge that the trial court was confused about the plea agreement.

5

The dissent argues that the appellant should have known that he was facing a maximum sentence of fifteen years in prison when he filed his motion to correct sentence. This argument assumes that the trial court had the ability to hold tight to a sentencing scheme even when only one sentence is challenged and no sentencing scheme was readily apparent. Unlike some federal courts, Florida courts have not adopted this procedure. Accordingly, we reverse and remand for reinstatement of the appellant's original sentences in each of the cases on appeal.

REVERSED and REMANDED with directions.

M.K. THOMAS, J., concurs; WINOKUR, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WINOKUR, J., dissenting.

Mock initially received a sentence of ten years on these counts, followed by a consecutive sentence of five years, in spite of the fact that the plea agreement called for all counts to run concurrent. Mock later informed the court that the counts were supposed to run concurrent, so the court altered the sentences to fifteen years concurrent. Mock then claimed that the increase of sentences from ten to fifteen years violates double jeopardy because he had a "legitimate expectation of finality" in the ten-year sentences. I would affirm because I cannot conclude that a defendant has a legitimate expectation of finality in a sentence that violates the plea agreement on which it is based. *See Dunbar v. State*, 89 So. 3d 901, 904-05 (Fla. 2012) (noting that "the later imposition of more onerous terms 'violates the double jeopardy clause only when it disrupts the defendant's legitimate expectations of finality'") (quoting *United States v. Young*, 953 F.2d 1288, 1291 n.3 (11th Cir.

6

1992)).* To the extent Mock did have a reasonable expectation of finality in the original sentence, it was that it called for a total of fifteen years imprisonment. This term remained unchanged by the second sentencing order.

Mock's claim is curious because it was he who actually moved the court to correct the sentencing order. The court did so, but in a manner that did not suit him. Mock then changed course and claimed that he had a reasonable expectation in the finality of the very sentence that he had moved to correct. Appellant reasonably expected finality in the entire original sentence, not just the part of it that benefits him.

The majority holds that a defendant has a reasonable expectation of finality in a sentence unless there is "evidence contained in the record that the appellant withheld information from the trial court." Maj. op. at 5. Reasoning that the record here discloses no evidence that Mock withheld knowledge of the court's misunderstanding of the plea agreement, the majority concludes that he had a reasonable expectation that the ten-year sentences were final. *Annatone v. State*, 198 So. 3d 1031 (Fla. 5th DCA 2016), belies this rule: the defendant there did not withhold information that resulted in an improper sentence. Instead, the parties simply failed to correct the sentencing court when it entered a sentence that was contrary to the plea agreement. *Id.* A "reasonable expectation" is not "any expectation that does not derive from deception." It is just one that is reasonable. Mock's expectation that he could only be sentenced to ten years was unreasonable. It was unreasonable not because he withheld the fact that the sentence violated the plea agreement, but because no reasonable person could rely on a sentence that violates the plea agreement.

---

\* *See Annatone v. State*, 198 So. 3d 1031, 1034 (Fla. 5th DCA 2016) (finding that a defendant has no legitimate expectation of finality in the pronouncement of restitution in an amount lower than that to which he agreed as part of a negotiated plea agreement that the court had accepted). *See also State v. Rodrigues*, 218 P.3d 610, 618–19 (Utah 2009) (holding that a defendant had no legitimate expectation of finality of a sentencing order "because it did not reflect what he had agreed to in the plea agreement").

Nor would any person who reasonably expected finality in a sentence move to change it. Accordingly, I would affirm the challenged sentences and would not unduly restrict the meaning of "unreasonable" in this context.

_____

Andy Thomas, Public Defender, and Steven Seliger, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee