# First District Court of Appeal
## State of Florida

_____

No. 1D2022-0351
_____

RONALD STUYVESANT BOYD,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____


On appeal from the Circuit Court for Lafayette County.
Darren Kenneth Jackson, Judge.

June 5, 2024


WINOKUR, J.

Ronald Boyd pleaded no contest to lewd or lascivious molestation of a fourteen-year-old girl. Even though his conviction carries a maximum sentence of fifteen years, Boyd received probation. He appeals his judgment and sentence imposed after revocation of probation.

I

While this appeal was pending, Boyd filed in the trial court a motion to correct a sentencing error. Boyd asked the lower court to remove Count 2 from the judgment, remove Count 3 from the scoresheet, and issue a new sentence "pursuant to a corrected scoresheet." The trial court failed to rule on Boyd's motion;

therefore, the motion is deemed denied. We agree that the judgment rendered on January 6, 2022, erroneously included Count 2 for lewd or lascivious molestation after it was dismissed on May 16, 2018. Therefore, we reverse as to that issue and remand for the trial court to remove Count 2 from the Judgment and Sentence.

## II

With regard to the violation-of-probation (VOP) scoresheet, however, while we find that it contains multiple errors that the parties invited, we cannot find them harmful. To the contrary, they benefited Boyd.

Following Boyd's second VOP, the trial court sentenced him to nine years in prison. Boyd now argues—and the State presumes—that the scoresheet contains an error of 0.15 months in the calculation of the lowest permissible sentence (LPS). According to Boyd, the scoresheet erroneously includes a misdemeanor that increased the LPS from 24 months to 24.15 months.

Ironically, neither party on appeal recognizes that this 0.15-month error is not the material scoresheet error. Rather, the error involves the omission of 11.25 **years** from that figure. Stated differently, the error is not 24.15 months instead of 24 months; it is 24.15 months instead of 159 months. Because the material scoresheet error benefitted Boyd, we find no basis for reversal as to that issue.

In order to understand the manifold scoresheet errors infecting this case, we explain in detail the original sentencing as well as the sentencing following the VOPs.

## A

In 2018, the State charged Boyd with two counts of lewd or lascivious molestation of a person 12 years of age or older but less than 16 years of age, and two counts of contributing to the delinquency of a child. The molestation counts constituted second-degree felonies, punishable up to fifteen years in prison. *See*

2

§§ 800.04(5)(c)2., 775.082(3)(d), Fla. Stat. Counts 3 and 4 alleged that Boyd committed misdemeanors. *See* § 827.04(1)(a), Fla. Stat.

Pursuant to a plea agreement, Boyd entered a plea of nolo contendere to Counts 1 and 3, and State filed a Notice of Nolle Prosequi as to Counts 2 and 4. The trial court withheld adjudication of guilt and sentenced Boyd to 364 days in jail followed by 24 months of Sex Offender Probation.

Even though he was found guilty of an offense that carried a maximum sentence of 15 years, Boyd only scored 36.20 points on the Criminal Punishment Code Scoresheet that the State prepared. Boyd's score is broken down as follows:

- 36.00 for the "Primary Offense" of Lewd or Lascivious Conduct;
- 0.20 for the "Additional Offense" of Child Abuse: Contributing;
- 0.00 for "Victim Injury"; and,
- 0.00 for "Enhancements"

This scoring contains numerous errors and omissions. First, the scoresheet lists the wrong primary offense. Instead of lewd or lascivious molestation under subsection (5) of section 800.04, the scoresheet lists lewd or lascivious conduct under subsection (6). While lewd or lascivious molestation and lewd or lascivious conduct are both second-degree felonies, the former is a "Level 7" offense whereas the latter is a "Level 6" offense. In practical terms, this scoresheet error lowered Boyd's "Total offense score" by 20 points. *See* § 921.0024(1)(a), Fla. Stat. (listing 36 points for a Level 6 offense versus 56 points for a Level 7 offense). Because of the error in identifying the primary offense, the scoresheet failed to reflect the severity of Boyd's sexual molestation of a fourteen-year-old girl.

Second, the scoresheet does not include 40 Victim Injury points for Sexual Contact. *See* § 921.0024(1)(a), Fla. Stat. (listing 40 Victim Injury points for Sexual Contact); *see also Brooks v. State*, 54 So. 3d 1069, 1071 (Fla. 4th DCA 2011) (holding trial court did not err in imposing 40 victim injury points for sexual contact where the State's factual basis for the charge of lewd or lascivious molestation, which defense counsel stipulated, clearly alleged that

appellant had sexual contact with the victim). Because the State alleged in Count 1 that Boyd "unlawfully and intentionally touch[ed] in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them" of the victim, and because Boyd entered a plea of nolo contendere to that Count, the scoresheet should have included 40 Victim Injury points for Sexual Contact. Without the mistake as to the primary offense, and without the omission of victim injury points for sexual contact, Boyd should have scored 96.20 points on the "Subtotal Sentence Points" section of the scoresheet.

Third, the scoresheet did not include any "Enhancements" for "Adult-on-Minor Sex Offense." Applying the correct multiplier of x2, Boyd's "Enhancement Subtotal Sentence Points" should have been 192.40 points, broken down as follows: [56 for the Primary Offense + 0.20 for the Additional Offense + 40 for Sexual Contact] x 2 for Enhancement = 192.40.* Accordingly, Boyd's "Total Sentence Points" should have been 192.40 points—not the 36.20 points listed on the scoresheet.

With a correct number listed for the "Total Sentence Points," Boyd's LPS should have been 123.30 months or 10.275 years in prison, ([196.40 – 28] x 0.75 = 123.30). *See* § 921.0024(2), Fla. Stat. By only scoring 36.20 points, however, Boyd's score supported the nonstate prison sanction he received. *See* § 921.0024(2), Fla. Stat.

Because the LPS should have been 10.275 years in state prison, Boyd's nonstate prison sanction was an improper downward departure—improper because the trial court did not articulate any valid reasons for the sentence imposed. *See* § 921.002(1)(f), Fla. Stat. (requiring that departures below the LPS

---

* Even though Boyd entered a plea of nolo contendere, the State should have prepared an accurate scoresheet that listed the correct primary offense, included victim injury points for sexual contact, and included enhancement for an adult-on-minor sex offense. *See State v. Anderson*, 905 So. 2d 111, 118 (Fla. 2005) ("[I]t is essential for the trial court to have the benefit of a properly calculated scoresheet when deciding upon a sentence . . . .").

4

"must be articulated in writing by the trial court judge and made only when circumstances or factors reasonably justify the mitigation of the sentence."); § 921.0026(1), Fla. Stat. (prohibiting downward departures "unless there are circumstances or factors that reasonably justify the downward departure.").

In this case, the State did not need to reduce the scoresheet points to make the negotiated sentence appear consistent with the LPS. If the State had provided the trial court with an accurate scoresheet, then the court could have identified the plea bargain as the basis for a downward departure. *See* § 921.0026(2)(a), Fla. Stat. ("Mitigating circumstances under which a departure from the lowest permissible sentence is reasonably justified include, but are not limited to . . . [t]he departure results from a legitimate, uncoerced plea bargain."). But for reasons unknown, the scoresheet section entitled "Reasons for Departure – Mitigating Circumstances" was left blank.

Three years later the trial court conducted a VOP hearing. Here Boyd scored 90.40 "Total Sentence Points," broken down as follows:

- 56.00 for the "Primary Offense" of Lewd or Lascivious Molestation (Count 1);
- 28.40 for "Additional Offenses," broken down as:
  - 28 for Lewd or Lascivious Molestation (probably Count 2); and,
  - 0.40 for Child Abuse: Contributing (probably Count 4);
- 0.00 for "Victim Injury";
- 0.00 for "Enhancements"; and,
- 6.00 for Community Sanction (6 points for any violation other than a new felony conviction).

On this first VOP soresheet, Boyd scored an LPS of 46.80 months. The trial court sentenced Boyd to probation.

Like the scoresheet from the original trial, the first VOP scoresheet contained numerous errors and omissions. While it correctly included 56 points for the primary offense of Lewd or Lascivious Molestation, the first VOP scoresheet nevertheless includes a mistake with Counts 2 and 4, which had been dismissed.

5

This mistake inflated Boyd's "Subtotal Sentence Points" by 28.40 points. Also like the scoresheet from the original trial, the first VOP scoresheet omitted 40 "Victim Injury" points for "Sexual Contact." The lack of victim injury points lowered Boyd's "Subtotal Sentence Points"—instead of 90.40 points (which includes the erroneous points for additional offenses), Boyd should have scored 102 points.

And as with the scoresheet from the original trial, the first VOP scoresheet omitted any "Enhancements" for "Adult-on-Minor Sex Offense." This prevented any multiplication of the "Subtotal Sentence Points." *See* Fla. R. Crim. P. 3.704(d)(24)(A). Accepting the 6 points for "Community Sanction" as correct, Boyd should have scored 204 "Total Sentence Points" ([56 for the Primary Offense + 40 for Sexual Contact + 6 for Community Sanction] x 2 for Enhancement = 204). With a correct number listed for the "Total Sentence Points," Boyd's lowest permissible sentence should have been 132 months or 11 years in prison, (that is, [204 – 28] x 0.75 = 132).

Based on the first VOP scoresheet, the trial court rendered an Order of Modification of Sex Offender Probation, extending probation for five years including two years of community control and other conditions.

As with the original sentence, this sentence appears to be an improper downward departure sentence—again, improper because the trial court did not articulate any valid reasons for the nonstate prison sanction imposed. As before, the section of the scoresheet entitled "Reasons for Departure – Mitigating Circumstances" was left blank.

Approximately one year later, the trial court conducted another VOP hearing. Boyd admitted to one violation in exchange for the State's dismissing the other. When the parties discussed the scoresheet (the second VOP scoresheet), the State asserted that Boyd should score "a hundred and fifty-nine months." The State included 40 points for victim injury by sexual contact. Additionally, the State included 120.2 points under the "Enhancements" section for "Adult-on-Minor Sex Offense."

6

It appears that the State miscalculated the "Subtotal Sentence Points" by including Count 3 as an "Additional Offense" even though Boyd previously completed the sentence on that misdemeanor count. *See Sanders v. State*, 35 So. 3d 864 (Fla. 2010). This increased the point total by 0.20 points.

The parties agreed on 24 points under the "Community Sanction" section of the scoresheet. *See* § 921.0024(1)(b), Fla. Stat. Accepting the 24 points for "Community Sanction" as correct, Boyd should have scored 120 points on the "Subtotal Sentence Points" section of the scoresheet, broken down as follows: 56 for the Primary Offense + 40 for Sexual Contact + 24 for Community Sanction = 120 points.

Presuming that Boyd should have scored 120 sentence points, Boyd's "Enhancement Subtotal Sentence Points" should have been 240 points. *See* Fla. R. Crim. P. 3.704(d)(24)(A)(ii)e. Boyd's "Total Sentence Points" should have been 240 points as well. *See* Fla. R. Crim. P. 3.704(d)(25). Therefore, Boyd's lowest permissible sentence should have been 159 months, or "over 13 years," as asserted by the State. *See* Fla. R. Crim. P. 3.704(d)(26).

After the State suggested a lowest permissible sentence of approximately 13.25 years, counsel for Boyd noted, correctly, that the original scoresheet did not score the case properly. Counsel then accused the State of trying to fix the problems with the original scoresheet by submitting an entirely new scoresheet for the VOP hearing. and argued that Boyd "pled to" the original scoresheet, which "was far, far different" than the scoresheet prepared by the State for the current VOP hearing. Counsel conceded that the original scoresheet should have been "somewhere around 140 or 130 some-odd months or something." However, Boyd's counsel argued that the lack of victim injury points could not be corrected because it was "essentially . . . res judicata."

Boyd's counsel then added VOP points onto the original scoresheet to come up with a lowest permissible sentence of 24.15 months in prison. Boyd's counsel agreed with the State that the maximum sentence for Count 1 would be fifteen years.

To resolve the scoresheet dispute, the State suggested that the parties stipulate to the original scoresheet with an additional 24 points for the probation violations. Boyd's counsel agreed. The trial court identified 24.15 months as the lowest permissible sentence on the scoresheet used for the hearing. Boyd's counsel then stipulated to the accuracy of the scoresheet.

On the final scoresheet used by the trial court, Boyd scored 60.20 points, broken down as follows:

- 36.00 for the "Primary Offense" of Lewd or Lascivious Molestation;
- 0.20 for the "Additional Offense" of Child Abuse: Contributing;
- 0.00 for "Victim Injury";
- 0.00 for "Enhancements"; and,
- 24.00 for "Community Sanction."

This computation resulted in an LPS of 24.15 months. The trial court adjudicated Boyd guilty and sentenced him to nine years in prison. Boyd appeals.

B

The State makes two arguments in response to Boyd's sentencing-error claims. First, the State argues that Boyd invited the error in his scoresheet. *See Czubak v. State*, 570 So. 2d 925, 928 (Fla. 1990) ("Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal." (citations omitted)). While we agree, we note that the State also invited the error.

Second, the State argues that the difference between the sentence imposed (9 years) and the LPS (whether 24.15 months or 24 months) shows the harmlessness of any LPS error (presumed to be 0.15 months). *See generally Thomas v. State*, 351 So. 3d 197, 210 (Fla. 1st DCA 2022) ("Because the trial court's sentences are vastly larger than the lowest permissible sentence and are mostly to be served consecutively, the record shows that the lowest permissible sentence played no part in the trial court's sentencing decision. The scoresheet error was therefore harmless and does not warrant a remand for resentencing.").

8

According to the State, 24.15 months versus 24 months on the bottom end of the sentencing range does not matter because the trial court imposed a sentence of nine years in prison. *See generally Brooks v. State*, 969 So. 2d 238, 241 (Fla. 2007) ("When scoresheet error is presented [on direct appeal, through a motion to correct a sentencing error under Rule 3.800(b), or through a postconviction motion under Rule 3.850], any error is harmless if the record conclusively shows that the trial court *would have imposed* the same sentence using a correct scoresheet.").

As we have noted already, neither party on appeal recognizes that those errors benefitted Boyd. *See generally State v. Marshall*, 869 So. 2d 754, 755 (Fla. 5th DCA 2004) (noting that justice is not served by awarding a defendant something to which he is not entitled when the appellant is the beneficiary of a mistake in his original guidelines scoresheet). By agreeing to a "Total Sentence Points" calculation that was 0.20 points too high (because it erroneously included points for an "Additional offense" that was not before the court), Boyd's trial counsel also agreed to a scoresheet that was 179.80 points too low (because it did not include the correct offense level, did not include victim injury points for sexual contact, and did not include enhancement points for an adult-on-minor sex offense).

As the prosecutor recognized below, the original scoresheet contained errors and omissions that undervalued the severity of Boyd's criminal conduct, which was "a serious offense." By perpetuating those errors with the stipulated scoresheet, both parties failed to provide the trial court with pertinent information regarding an appropriate sentence in this case. *See generally Fernandez v. State*, 199 So. 3d 500, 502 (Fla. 2d DCA 2016) ("Regardless of whether the sentence is being imposed following a trial, entry of a plea, or pursuant to a resentencing proceeding, an accurate scoresheet must be prepared to inform and guide the court in making its sentencing decision.").

Consequently, it is unclear whether the trial court intentionally or unintentionally imposed an improper downward departure sentence in this case—improper because the trial court failed to articulate any factors that would justify a prison sanction

9

below the accurate LPS of 13.25 years. *See generally Martin v. State*, 779 So. 2d 593, 593 (Fla. 2d DCA 2001) (identifying a sentence as "an inadvertent downward departure.").

Furthermore, the trial court was not bound by the parties' stipulation. On its own, the trial court could have corrected the multiple scoresheet errors that have lingered for years in this case. *See* Fla. R. Crim. P. 3.800(a)(1) ("*A court may at any time* correct an illegal sentence imposed by it, or *an incorrect calculation made by it in a sentencing scoresheet*, when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief . . . ." (emphases supplied)); *see also Tasker v. State*, 48 So. 3d 798, 805 (Fla. 2010) (holding that "a claim of scoresheet error on the initial CPC sentencing scoresheet utilized when a defendant is placed on probation may be raised for the first time after revocation of probation.").

Despite the obvious windfall Boyd received below, however, his appellate counsel asks this Court to reverse the improper downward sentence so that Boyd can "be resentenced to Count 1 pursuant to a corrected scoresheet . . . ." We cannot do so for two reasons.

First, Boyd suffered no prejudice. *See Earl v. State*, 314 So. 3d 1253, 1255 (Fla. 2021) (noting that defendants are not entitled to "unlawfully lenient sentences" and cannot secure relief "absent a showing of prejudice." (citing § 924.051, Fla. Stat.)).

Second, Boyd invited the error. *Cf. Shenfeld v. State*, 14 So. 3d 1021, 1025 (Fla. 4th DCA 2009) ("The State argues that Shenfeld's sentence was an illegal downward departure based on, among other things, scoresheet errors, and that Shenfeld was improperly placed on drug offender probation and administrative probation. These arguments were waived by the State because it did not object to or timely appeal from any of the alleged errors by the trial court."), *aff'd*, 44 So. 3d 96 (Fla. 2010).

We do not address whether the State may seek correction of the sentence following this appeal, or whether the trial court may address the scoresheet errors sua sponte. However, we note that, because a defendant has no expectation of finality in an illegal

sentence caused by a scoresheet error, a trial court may impose a longer term of imprisonment when it corrects the illegality. *See Dunbar v. State*, 89 So. 3d 901, 905 (Fla. 2012) ("[T]he later imposition of more onerous terms 'violates the double jeopardy clause only when it disrupts the defendant's legitimate expectations of finality.'" (quoting *United States v. Young*, 953 F.2d 1288, 1291 n.3 (11th Cir. 1992))); *see also Goene v. State*, 577 So. 2d 1306, 1309 (Fla. 1991) (noting that the defendant "had no legitimate expectation of finality in the sentence originally imposed and there is no double jeopardy prohibition against reimposition of a correct sentence.").

Furthermore, Boyd has no expectation of finality in a sentence he challenges on appeal. *See James v. State*, 845 So. 2d 238, 240 (Fla. 1st DCA 2003) ("[T]here is no legitimate expectation of finality in a sentence a defendant seeks to overturn."); *Trotter v. State*, 825 So. 2d 362, 365 (Fla. 2002) ("[D]ouble jeopardy is not implicated in the context of a resentencing following an appeal of a sentencing issue."); *Dunbar*, 89 So. 3d at 904 ("A defendant has a right to a legal sentence. This defendant is about to receive the benefit of an illegal sentence, in all likelihood because a judge and several lawyers were anxious to go to lunch. Somehow, Florida's technical approach to double jeopardy allows inadvertent mistakes to give defendants the right not to legal sentences, but to sentences that are often more like half jeopardy." (quoting *Gardner v. State*, 30 So. 3d 629, 634–35 (Fla. 2d DCA 2010) (Altenbernd, J., dissenting))); *Phillips v. State*, 47 Fla. L. Weekly D2646 (Fla. 2d DCA Dec. 15, 2022) (Stargel, J., concurring in part and dissenting in part) ("[W]hile a defendant is entitled to an expectation of finality of a *legal* sentence, the State and its citizens are equally entitled to a sentencing system where cases involving multiple counts of conviction that are sentenced together as a sentencing package are permitted to continue to be considered together upon resentencing when errors are discovered on a scoresheet.").

## III

For the foregoing reasons, we reverse the trial court's denial of Boyd's motion to correct a sentencing error. On remand, the trial court shall remove Count 2 from the Judgment. Boyd need not be present for this ministerial act. We express no view on whether the

trial court may correct the errors in the scoresheet and resentence Boyd accordingly.

ROBERTS and KELSEY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Jessica J. Yeary, Public Defender, and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Michael L. Schaub, Assistant Attorney General, Tallahassee, for Appellee.